HARDY RAY MURPHY CA Bar No. 187149
hardy.murphy@ogletree.com
MACY VALDES CA Bar No. 332150
macy.valdes@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:     213-239-9800
Facsimile:     213-239-9045

Attorneys for Defendant
BSN SPORTS, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALATIEL PENALOZA CRUZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BSN SPORTS, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:26-at-00083<br><br>**DEFENDANT BSN SPORTS, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>Filed concurrently with:<br>• Civil Cover Sheet;<br>• Certification of Interested Parties;<br>• Corporate Disclosure Statement;<br>• Notice of Related Cases;<br>• Declarations of Troy Closson;<br>• Declaration of Magdalena Sudibjo; and<br>• Declaration of Macy Valdes<br><br>Complaint Filed:  November 14, 2025<br>Trial Date:          None<br>District Judge:     TBD<br>Magistrate Judge:  TBD |

TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendant BSN Sports, LLC ("BSN Sports" or "Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446.  In support of this removal, Defendant states as follows:

## I.  STATE COURT ACTION

1.    On November 14, 2025, Plaintiff Salatiel Penaloza ("Plaintiff") filed a civil complaint (the "Complaint") in the Superior Court of the State of California, County of Sacramento, as Case No.25CV027604, entitled *Salatiel Penaloza, individually, and on behalf of all others similarly situated v. BSN Sports, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive* (the "Action").

2.    On December 15, 2025, Plaintiff caused BSN Sports to be served with the Complaint, together with the Summons on Plaintiff's Complaint, Summons, Civil Cover Sheet, Notice of Case Assignment and Case Management Conference. Declaration of Macy Valdes ("Valdes Decl.") ¶ 2. A true and correct copy of the service of process notice of service on BSN Sports is attached to this Notice as **Exhibit 1**. *Id*. ¶ 2, Ex. 1 (the "SOP Notice"). A true and correct copy of the Complaint that was served on BSN Sports, and then transmitted to counsel for BSN Sports, is attached to this Notice as **Exhibit 2**. *Id*. ¶ 2, Ex. 2. True and correct copies of the Summons on Plaintiff's Complaint, Civil Cover Sheet, and Notice of Case Assignment and Case Management Conference are attached to this Notice as **Exhibit 3**. *Id.* ¶ 2, Ex. 3. Other than the documents attached to this Notice as Exhibits 2 and 3, BSN Sports has received no other service of any pleadings, orders, or filings in this case. *Id.*

3.    On January 13, 2026, BSN Sports submitted for filing in the Superior Court of the State of California, County of Sacramento, an Answer to Plaintiff's Complaint. A true and correct copy of this Answer is attached to this Notice as **Exhibit 4**. Valdes Decl. ¶ 3. Other than BSN Sports' Answer, attached hereto as Exhibit 4, BSN Sports has filed no other pleadings or documents in this case. *Id.*

4.      Plaintiff's Complaint asserts—on behalf of Plaintiff and all nonexempt employees of BSN Sports who have worked for BSN Sports in California during the applicable statute of limitations—the following causes of action against BSN Sports: (1) Failure to Pay All Wages and Minimum Wages (Labor Code §§ 204, 203, 1194, 1194.2, and 1197); (2) Failure to Pay Overtime Wages (Labor Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Labor Code §§ 226.7, and 512); (4) Failure to Provide Rest Periods (Labor Code §§ 226.7); (5) Failure to Reimburse Business Expenses (Labor Code § 2802); (6) Failure to Timely Pay Wages at Termination (Labor Code §§ 201-20); (7) Failure To Provide Accurate Itemized Wage Statements (Labor Code § 226); and (8) Violations of Business & Professions Code § 17200, *et seq*. *See generally* Complaint.

## II.    REMOVAL IS TIMELY

5.      A defendant in a civil action has 30 days from the date it is validly served with a summons and complaint to remove the action to federal court. 28 U.S.C. § 1446(b) ("[A] notice of removal may be filed within thirty days after receipt by the Defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable").

6.      Service of Plaintiff's Summons and Complaint on BSN Sports was effectuated on December 15, 2025. Valdes Decl. ¶ 2, Exs. 2-3. As BSN Sports filed this removal within 30 days of service of the Summons and Complaint, removal is timely.

## III.    CLASS ACTION FAIRNESS ACT JURISDICTION

7.      **Basis Of Original Jurisdiction**.  This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  As such, this action may be removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

8.      **Number Of Putative Class Members**.  Plaintiff alleges this putative class action on behalf of himself and "[a]ll persons who worked for [sic] Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 23).  Plaintiff filed the Complaint on November 14, 2025.  *Id.* ¶ 2. Assuming that the putative class, as defined in Plaintiff's Complaint (the "Class"), comprises all

current and former non-exempt employees who worked for BSN Sports in California from November 14, 2021 through November 14, 2022 ("Applicable Period"), this Class includes at least 245 employees. Declaration of Troy Closson ("Closson Decl.") ¶ 9; Declaration of Magdalena Sudibjo ("Sudibjo Decl.") ¶ 5.

9.      **Diversity Of The Parties.**  The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizenship of at least one class member is diverse from the citizenship of at least one defendant.  28 U.S.C. § 1332(d)(2)(A).

10.      **Plaintiff Is A California citizen.**  Plaintiff, a putative class member, is—and at all relevant times, was—a resident <u>and citizen</u> of the State of California.  Valdes Decl. ¶ 2 (Complaint ¶ 13); Closson Decl. ¶ 7. Additionally, Plaintiff provided BSN Sports with an address for Plaintiff, for employment and payroll purposes, that, at all times, was and is located in the State of California. Closson ¶ 7. Accordingly, Plaintiff was, at the time he commenced this action, and still is, as of the filing of this Removal, <u>a citizen</u> of the State of California.

11.      **The Putative Class Is Based In California.**  Members of the proposed class are or were employed in California. Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 23). Therefore, members of the proposed class are presumed to be citizens of the State of California.  *See, e.g.*, *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (noting place of residence and "place of employment" are among the factors to be considered in determining an individual's citizenship).

12.      Thus, even if Plaintiff were somehow a citizen of Texas or Delaware (and there is no evidence that he is, and, rather, evidence that he is not and is a citizen of California), minimal diversity would still exist for purposes of CAFA jurisdiction as <u>just one</u> of the 245 putative class members was and is not a citizen of either Texas or Delaware.  This showing is easily met where, as here, the putative class members currently work, or formerly worked, for BSN Sports within the State of California. Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 23).

13.      **BSN Sports Is Not A California Citizen.**  A corporation or limited liability company, such as BSN Sports, is a citizen of: (1) any state where it has been incorporated (or organized); and (2) any state where it has its "principal place of business."  28 U.S.C. § 1332(c)(1).

14.     BSN Sports is (and, at the time Plaintiff's Complaint was filed, was) a single-member limited liability company, organized and existing under the laws of the State of Delaware, with its principal place of business is located in Farmers Branch, Texas. Closson Decl. ¶ 3. BSN Sports' executive and administrative operations were and are managed from BSN Sports' principal place of business in Texas, where its executive officers maintain their offices, and from which these executive officers make and implement company-wide operating, financial, accounting, payroll, marketing, human resources and information system decisions. *Id.*

15.     BSN Sports' sole member is Varsity Brands Holding Co., LLC. Closson Decl. ¶ 3

   **(a)     BSN Sports' Sole Member And Any Members Of That Or Other Companies Are Not California Citizens.**

16.     At the time of the filing of the Complaint and this removal, Varsity Brands Holding Co., LLC was and is a single-member limited liability company, organized and existing under the laws of the State of Indiana. Closson Decl. ¶ 3 Varsity Brands Holding Co., LLC is a holding company, headquartered at Farmers Branch, Texas. *Id.* Varsity Brands Holding Co., LLC's sole member is Hercules VB Holdings, LLC. *Id.*

17.     At the time of the filing of the Complaint and this removal, Hercules VB Holdings, LLC was and is a single-member limited liability company, organized and existing under the laws of the State of Delaware. Closson Decl. ¶ 3 Hercules VB Holdings, LLC is a holding company, headquartered at Farmers Branch, Texas. Hercules VB Holdings, LLC's sole member is Hercules Achievement, LLC. *Id.*

18.     At the time of the filing of the Complaint and this removal, Hercules Achievement, LLC was and is a single-member limited liability company, organized and existing under the laws of the State of Delaware. Closson Decl. ¶ 3. Hercules Achievement, LLC is a holding company, headquartered at Hercules Achievement, LLC's sole member is Hercules Achievement Holdings, LLC. *Id.*

19.     At the time of the filing of the Complaint and this removal, Hercules Achievement Holdings, LLC was and is a single-member limited liability company, organized and existing under the laws of the State of Delaware. Closson Decl. ¶ 3 Hercules Achievement Holdings, LLC is a

holding company, headquartered at Farmers Branch, Texas. *Id.* Hercules Achievement Holdings, LLC's sole member is Varsity Brands, Inc. *Id.*

20. At the time of the filing of the Complaint and this removal, Varsity Brands, Inc. was and is a corporation organized under the laws of the State of Delaware, with its principal place of business in Farmers Branch, Texas. Closson Decl. ¶ 3 Varsity Brands, Inc.'s Farmers Branch, Texas principal place of business is where a majority of Varsity Brand, Inc.'s executive and administrative functions take place. Closson Decl. ¶ 3. The functions performed at Varsity Brands, Inc.'s Farmers Branch, Texas principal place of business include the activities of Varsity Brands, Inc.'s high-level management teams, and the majority of Varsity Brands, Inc.'s domestic administrative functions, including payroll, accounting, purchasing, marketing, human resources and information systems. *Id.* All of Varsity Brands, Inc.'s company-wide policies and procedures are formulated by its executives in Texas. *Id.*

### (b) BSN Sports Is Not A California Citizen.

21. Given that BSN Sports is incorporated in the State of Delaware, and has its principal place of business in the State of Texas, in addition to all related members of BSN Sports having no citizenship in California, BSN Sports is a citizen of Delaware and Texas. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (A corporation's "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," in what has been referred to as "the corporation's 'nerve center'").

22. BSN Sports has never been incorporated in California and has never had its headquarters, executive offices, or principal place of business in California. Closson Decl. ¶ 3.

23. Accordingly, BSN Sports is a citizen of Texas and Delaware, and not a citizen of California.

24. **DOE Defendant Citizenship Must Be Disregarded.** The citizenship of fictitiously-named "Doe" defendants must be disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998).

25. **Diversity Of Citizenship Exists For Purposes Of CAFA.** Because Plaintiff is a California citizen, in addition to at least one putative class member is a citizen of California, and

because BSN Sports is a citizen of Delaware and Texas, this case meets the requirements for minimal diversity under CAFA.

26.    **Overview Of Amount In Controversy.**    To remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

27.    In considering the evidence submitted by the removing defendant, a court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013)); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-701 (9th Cir. 2007) (noting that, where the complaint seeks attorneys' fees and a successful plaintiff would recover attorneys' fees at trial, attorneys' fees should be included in calculating the amount-in-controversy under CAFA). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

28.    BSN Sports denies the validity of Plaintiff's claims and Plaintiff's requests for relief. BSN Sports does not concede, in any way, that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to class-wide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief. However, "[i]n measuring the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict

for the plaintiff on all claims made in the complaint.'" *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. Mar. 27, 2002 [the Hon. Morrow]) (alterations omitted); *see also Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability," and a defendant "need not concede liability" to establish the requisite amount in controversy). Therefore, assuming—as BSN Sports must, for purposes of establishing CAFA jurisdiction, only—that the allegations in Plaintiff's Complaint are true, the Complaint places more than $5,000,000 in controversy in this case, exceeding the jurisdictional minimum for removal under CAFA. *See Lewis*, 627 F.3d at 401.

29.     As described further below, as well as in the concurrently filed declarations from Troy Closson, Magdalena Sudibjo, and Macy Valdes,[1] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

30.     **BSN Sports' Estimate Of The Amount In Controversy.**  In determining the amount in controversy in support of its Notice of Removal, BSN Sports relies on a conservative estimate based only on amounts purportedly owed to Plaintiff and the putative class for unpaid wages and penalties as a result of the following alleged violations: (1) Failure to Pay All Wages and Minimum Wages (Labor Code §§ 204, 203, 1194, 1194.2, and 1197); (2) Failure to Pay Overtime Wages (Labor Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Labor Code §§ 226.7, and 512); (4) Failure to Provide Rest Periods (Labor Code §§ 226.7); (5) Failure to Reimburse Business Expenses

---

[1] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. See, e.g., *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set *forth* the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiffs claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

(Labor Code § 2802); (6) Failure to Timely Pay Wages at Termination (Labor Code §§ 201-20); and (7) Failure To Provide Accurate Itemized Wage Statements (Labor Code § 226). *See generally* Ex. 2 (Complaint); *see also Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal).

(a) **The amount placed in controversy by the failure to pay all wages owed, including minimum wage claim.**

31. In his First Cause of Action, Plaintiff alleges that BSN Sports failed to pay Plaintiff and the putative class members all wages owed, including minimum wages. Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶¶ 15, 32).  Plaintiff's Complaint alleges widespread and regularly-occurring instances of unpaid wages, such as the following:

- "[Defendant] maintained a ***policy and practice of not paying*** Plaintiff and the Class for all hours worked." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶15) (emphasis added).

- "Defendant[sic] also regularly used a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff and the Class properly for all the time they have actually worked…." *Id.*

- "Plaintiff and the Class were required to work 'off-the-clock' and uncompensated" and "were required to remain available to handle manager's work-related questions while they were clocked out…." *Id.*

- "Plaintiff and the Class were required to use timecards for [Defendant's] timekeeping machine that took several minutes to complete." *Id.*

- "***In maintaining a practice of not paying all wages owed***, [Defendant] failed to maintain accurate records of the hours Plaintiff and the class worked." *Id.* (emphasis added).

- "…during all such time, [Defendant] ***systematically failed*** and refused to pay Plaintiff and the Class all such wages due, and failed to pay those wages twice a month." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶16) (emphasis added).

32. California Labor Code section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any
> employee receiving less than the legal minimum wage or the legal
> overtime compensation applicable to the employee is entitled to
> recover in a civil action the unpaid balance of the full amount of this
> minimum wage or overtime compensation, including interest thereon,
> reasonable attorney's fees, and costs of suit.

33.    Putative class members worked an aggregate of at least 18,775 workweeks during the Applicable Period.  Sudibjo Decl. ¶ 6. The average hourly rate of the putative class members was $20.12 per hour during this period. *Id.* at ¶ 8.

34.    Here, Plaintiff alleges that Defendant had a policy and practice of not paying the putative class for all hours worked, and ***systematically failed*** to pay them all wages owed.  Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶16). Based on the above facts and allegations contained in Plaintiff's Complaint, BSN Sports' calculation of the amount placed in controversy based on Plaintiff's allegations in support of his claim for unpaid minimum wages is at least $755,506 ($20.12 x 2 hours x 18,775 workweeks). The computation of the amount in controversy is based on a conservative calculation that putative class members worked two hours of unpaid straight time per week.

35.    An estimate of two hours of unpaid wages for every workweek has been accepted by the federal courts as a reasonable and conservative figure. *See e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (stating that, in a removal, the defendant need not prove that it "actually violated the law at the assumed rate"); *Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175 (E.D. Cal. 2020) (stating that "[d]istrict courts have found, however, that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegations"); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017 [The Hon. Jesus G. Bernal]) (finding that assumption of ***three*** hours per week was reasonable); *Olson v. Becton, Dickinson & Co.*, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding 25% violation rate to be appropriate based on the plaintiff's "pattern and practice" allegation); *Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of 1 hour of unpaid minimum wage per week was a "conservative estimate

routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"). Consequently, the amount placed in controversy based on Plaintiff's allegations in support of the Minimum Wage Claim is at least $755,506.

> **(b)      The amount placed in controversy by the overtime claim.**

36.      In his Second Cause of Action, Plaintiff alleges that BSN Sports failed to pay putative class members for all overtime worked. Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶¶ 15, 44). Plaintiff specifically alleges the following:

- "[Defendant] ***maintained a policy and practice*** of not paying Plaintiff and the Class for all hours worked, including all overtime wages." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 15) (emphasis added).

- "Plaintiff and the Class worked more than 8 hours in a workday and more than 40 hours in a workweek. Defendant maintained a ***policy and practice*** of not paying Plaintiff and the Class for all hours worked, including overtime wages." *Id.* (emphasis added).

- "[Defendant] failed to incorporate all renumeration when calculating the correct overtime rate of pay…." *Id.*

- "[Defendant] also regularly used a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff and the Class for all the time they actually worked…." *Id.*

- "…Plaintiff and the Class were required to work 'off-the-clock' and uncompensated…Plaintiff and the Class were required to use timecards for [Defendant's] timekeeping machine that took several minutes to complete." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 15).

37.      California Labor Code section 510 provides, *inter alia*, that any work in excess of 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half times an employee's regular rate of pay. Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

38.    Based on BSN Sports' records, putative class members worked an aggregate of 18,755 workweeks during the Applicable Period. Sudibjo Decl., ¶ 6.  The average hourly rate of the putative class members during the Applicable Period was $20.12.[2]  *Id*. at ¶ 7.

39.    Based on the above facts and allegations contained in Plaintiff's Complaint, including Plaintiff's allegations that Defendant had a policy and practice of routinely failing to pay the putative class overtime wages, BSN Sports' calculation of Plaintiff's claims for alleged unpaid minimum wages is approximately $1,132,052. (($20.12 x 1.5) x 2 hours x 18,755 workweeks). The computation of the amount in controversy is based on a conservative calculation that putative class members purportedly worked 2 hours of unpaid overtime per workweek. *See Andrade v. Beacon Sales Acquisition, Inc.,* 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019 [The Hon. Cormac J. Carney]) (stating that an assumption of **two hours** of uncompensated overtime per week was reasonable); *Avila,* 432 F. Supp. 3d at 1175; *Olson,.,* 2019 WL 4673329, at *4; *Kastler,* 2019 WL 5536198, at *4; *Torrez,* 2017 WL 2713400, at *4 (finding that assumption of **three hours** per week was reasonable); *Ray v. Wells Fargo Bank, N.A.,* 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011 [The Hon. A. Howard Matz]) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

40.    Consequently, the amount placed in controversy by the Unpaid Overtime Wages Claim, based on Plaintiff's allegations, is at least $1,132,052.

**(c)    The amount placed in controversy by the failure provide meal periods claims**.

41.    In his Third Cause of Action, Plaintiff alleges that BSN Sports "failed to provide Plaintiff and the Class with legally compliant meal periods."  Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶¶ 16, 51). Plaintiff further alleges the following:

---

[2] When calculating the amount in controversy for an overtime wages claim, courts routinely accept the use of average rates of pay.  *See, e.g., Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *6-7 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation"); *Taylor v. United Rd. Servs., Inc.*, 313 F. Supp. 3d 1161, 1179 (E.D. Cal. 2018) (same).

- "[Defendant] often required Plaintiff and the Class to work in excess of five consecutive hours a day without providing [sic] 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensation Plaintiff and the Class for meal periods…." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 16).

- "[Defendant] also did not adequately inform Plaintiff and the Class of their right to take a meal period…." *Id.*

- "…Plaintiff and the Class were not relieved of all duty during their meal periods…[they] were required to remain available to handle manager's work related questions while they were clocked out for their purported meal periods." *Id.*

- "…when Plaintiff and the Class worked shifts that were over 10 hours in length, [Defendant] failed to provide a second meal period altogether." *Id.*

- "…Defendant['s] policy and practice was to not provide meal periods to Plaintiff and the Class in compliance with California law." *Id.*

42.     Under California law, employees who are not provided meal periods are entitled to one hour of premium pay for each day that a meal period is not provided.  Labor Code § 226.7(c). Meal period claims are properly considered in determining the amount in controversy.  *See, e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019); *Muniz*, 2007 WL 1302504, at *4; *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at *8 (N.D. Cal. May 7, 2008).

43.     When determining the amount placed in controversy by a plaintiff's allegations regarding a common "policy" or "practice" of meal period violations—like those alleged by Plaintiff in the Complaint—the district courts have held that an assumption of up to 60% rate of meal period violations is both reasonable and conservative.  *See e.g.*, *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017 [The Hon. Philip S. Gutierrez]) (finding reasonable a 60% violation rate for claims relating to missed meal and rest periods when the complaint is indeterminate with respect to violation rates); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151-52 (S.D. Cal. 2018) (accepting 60% violation rate based on alleged "policy and practice" of violations); *Oda v.*

*Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015 [The Hon. Stephen V. Wilson]) (finding defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying meal or rest premiums, that class members sometimes did not receive all of their meal periods, and that not all rest periods were timely provided); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *7 (S.D. Cal. Nov. 1, 2019) ("allegations of 'periodically' or 'from time to time' along with broader language of 'pattern and practice' and 'policy and practice' would support a violation rate under 25%"); *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019 [The Hon. Otis d. Wright, II]) ("courts have found violations rates of 50% proper with language such as "policy and practice").

44.     Based on a review of BSN Sports' business records, during the Applicable Period, the putative class members allegedly worked an aggregate of 93,875 shifts that exceeded five hours in length and received an average hourly rate of at $20.12.  Sudibjo Decl., ¶¶ 7, 8.

45.     Based on a conservative and reasonable analysis using a 40% violation rate, BSN Sports' calculation of Plaintiff's allegations for failure to provide legally compliant meal periods is $755,506.  The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class members purportedly worked 93,875 shifts that exceeded five hours in length, that there was a 40% meal period violation rate, and each putative class member earned an average hourly rate of $20.12.[3]  Sudibjo Decl., ¶¶ 7, 8.

46.     Consequently, the amount placed in controversy by the Meal Period Claim is $755,506 ($20.12 x 93,875 shifts x 0.4).

---

[3] Relying on the average hourly rate of pay is well-accepted for calculating the amount placed into controversy for meal and rest period claims.  *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *2 (C.D. Cal. Apr. 9, 2019) (meal and rest); "[T]he average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation; *Hernandez v. Nuco2 Mgmt., LLC*, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018) (holding that "the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation").

**(d)** **The amount placed in controversy by the failure to provide rest breaks claim.**

47.     In his Fourth Cause of Action, Plaintiff alleges that Defendant failed to provide putative class members with rest breaks or premium payment in lieu thereof.  Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶¶ 17, 55).

48.     Plaintiff alleges regular and systemic failures to provide rest periods:

- "[Defendant] often required Plaintiff and the Class to work in excess of four consecutive hours a day without [Defendant] authorizing and permitting them to take a net 10-minute, continuous and uninterrupted, rest period for every five hours of work (or major fraction thereof), or without compensation Plaintiff and the Class for rest periods…." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 17).

- "[Defendant] did not have adequate policies or practices permitting or authorizing rest periods for Plaintiff and the Class…regarding the timing of rest periods…or…to verify whether Plaintiff and the Class were taking their required rest periods." *Id.*

- "…Plaintiff and the Class were required to stay on premises during rest periods, which needed to be taken in a specific location on site, and resulted in short periods that were not at least ten-minutes." *Id.*

49.     Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater.  *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal. 4th 1004, 1029 (2012).  Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided.  *See United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011).  Rest period claims are properly considered in determining the amount in controversy.  *See, e.g., Arias,* 936 F.3d at 926-27.

50.     When determining the amount placed in controversy by a plaintiff's allegations regarding a common "policy and practice of" rest period violations, it is both reasonable and conservative to apply an average violation rate of 40% to the putative class.  *See, e.g.*, *Bryant*, 284 F. Supp. 3d at 1151-52; *Oda,* 2015 WL 93335, at *5; *Cavada,* 2019 WL 5677846, at *7; *Elizarraz,* 2019 WL 1553664, at *3-4, *Alvarez*, 2017 WL 5952181, at *3, *Hender v. Am. Directions Workforce*

*LLC*, 2020 WL 5959908, at *2 (E.D. Cal. Oct. 8, 2020); *Danielsson v. Blood Centers of the Pacific*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019); *Trigueros v. Stanford Credit Union*, 2021 WL 2649241, at *3 (N.D. Cal. June 28, 2021); *Mackall v. Healthsource Global Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016.

51.    Based on a review of BSN Sports' business records, during the Applicable Period, the putative class members allegedly worked an aggregate of 93,875 shifts that exceeded 3.5 hours in length and received an average hourly rate of at $20.12.  Sudibjo Decl., ¶¶ 7, 8.

52.    Based on a conservative and reasonable analysis using a 40% violation rate, BSN Sports' calculation of Plaintiff's claim for failure to provide legally compliant rest periods is $755,506.  The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class members purportedly worked 93,875 shifts that exceeded 3.5 hours in length, that there was a 40% rest period violation rate, and each putative class member earned an average hourly rate of $20.12.  Sudibjo Decl., ¶¶ 7, 8.

53.    Consequently, the amount placed in controversy based on Plaintiff's allegations in support of his Rest Period Claim is at least $755,506 ($20.12 x 93,875shifts x 0.4).

**(e)    The amount placed in controversy by the failure to reimburse claim.**

54.    In support of his Fifth Cause of Action, Plaintiff alleges that, in violation of California Labor Code section 2802, "Plaintiff and the Class were required to use their personal cell phones for work purposes such as communicating with co-workers and supervisors regarding work-related issues." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 18). Plaintiff further alleges that "Plaintiff and the Class were not adequately compensated for these work-related expenses." *Id.*

55.    Based on a review of BSN Sport's business records, 245 putative class members worked 18,755 workweeks during the Applicable Period. Sudibjo Decl., ¶¶ 5,6.

56.    Assuming, arguendo, the truth of Plaintiff's allegations, and assuming conservatively that each putative class member incurred $5.00 in unreimbursed business expenses per workweek (that is, approximately $20 per month), putative class members are entitled to recover at least $93,875 in unreimbursed expenses: $5.00 (unreimbursed expenses per workweek) x 18,755 (workweeks) = $93,875. *See, e.g., Vallejo v. Sterigenics U.S., LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29,

2021) (approving assumption each employee incurred cell phone expenses of $25 per month, or $300 per year, where plaintiff provided no details regarding the total expenses).

**(f)    The amount placed in controversy by the failure to timely pay wages upon separation.**

57.    In his Sixth Cause of Action, Plaintiff alleges that BSN Sports failed to "timely pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum wages, overtime wages, meal period wages, and rest period wages."  Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶¶ 19, 63). Plaintiff also contends that "[Defendant] did not pay Plaintiff and the Class their final paychecks immediately upon termination." *Id.* at ¶ 19. As a result, Plaintiff, on behalf of himself and the putative class, seeks to recover their "accruing wages for each day they were not paid, at their regular rate of pay, up to 30 days maximum pursuant to California Labor Code § 203." *Id.* at ¶ 2, Ex. 2 (Complaint ¶ 66).

58.    Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id.* at 493.

59.    Given the allegations of Plaintiff's Complaint, it is reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at putative class members' daily wage rate.  *See, e.g., Mackall v. Healthsource Global Staffing, Inc.*, 2016 WL 4579099, at *5-*6 (N.D. Cal. Sept. 2, 2016) (approving 100% violation rate in calculating waiting time penalties on removal which are based on allegation that Defendant had a "pattern and practice" to not pay overtime wages due); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (in light of plaintiff's allegation that members of the putative class "routinely" missed meal periods, it was reasonable for defendant to assume that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the

waiting time penalty"); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and constituted "a reasonable estimate of the potential value of the claims," where the complaint alleged the defendants "regularly required" putative class members to work off-the-clock without compensation, and the defendants therefore estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. July 10, 2014) (same; CAFA amount in controversy satisfied in part by waiting time penalties; "Assuming a 100% violation rate is thus reasonably grounded in the complaint....Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum."); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 906, 912 (N.D. Cal. 2016) (approving assumption on removal that each employee would be entitled to maximum statutory penalty for 30 days).

60.    A three-year statutory period applies to Plaintiff's claim for waiting time penalties. Code Civ. Proc. § 338(a); *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389, 1398 (2010). During the three-year period preceding the filing of Plaintiff's Complaint, from November 14, 2022 through November 26, 2025, 99 non-exempt employees of BSN Sports at its California facilities separated from their employment with BSN Sports. Sudibjo Decl. ¶ 9. These 99 employees earned an average base rate of pay of $20.12 per hour from November 14, 2022 through November 26, 2025. Sudibjo Decl. ¶¶ 8, 9. Applying the $20.12 average base rate of pay, assuming an 8-hour average shift length, and applying Plaintiff's contention that these 99 terminated non-exempt employees at BSN Sports' California facilities are allegedly owed up to 30 days of waiting time penalties for BSN Sports' purported failures to pay all wages for all minimum wages, overtime wages, meal period wages, and rest period wages. Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 19), the amount placed in controversy by Plaintiff's waiting time penalties claim is $478,051 ($20.12 average base rate of pay x 8-hour shift x 30 days of penalties x 99 putative class members).

(g)     **The amount placed in controversy by the failure to provide accurate wage statements.**

61.     In his Seventh Cause of Action, Plaintiff alleges that BSN Sports failed to "furnish Plaintiff and the Class with accurate, itemized wage statements showing…correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for meal periods…[and] correct wages for rest periods…." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 20). Plaintiff further claims that "[t]he deficiencies [in the wage statements] include, among other things, the failure to correctly identify the gross wages earned by Plaintiff and the Class, failure to list the true 'total hours worked by employee,' and the failure to list the true net wages earned." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 70).  Plaintiff, on behalf of himself and the putative class, seeks to recover "their actual damages caused by Defendants' failure to comply with California Labor Code § 226(a)." Valdes Decl. ¶ 2, Ex. 2 (Complaint ¶ 72).

62.     California Labor Code section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)[.]"

63.     An estimated 100% wage statement violation rate for purposes of removal is reasonable in light of the allegations in Plaintiff's Complaint.  *See, e.g., Baker v. Propak Logistics*, Inc., 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019 [The Hon. Jesus G. Bernal]); *Mendoza v. Nat'l Vision, Inc.*, 2019 WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving of 100% wage statement violation rate where plaintiff's complaint alleged that "throughout the relevant period," Defendant "issued "wage statements [that] inaccurately report the number of hours worked, the number of overtime hours worked, gross wages earned, net wages earned and deductions"); *Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period).

64.     From November 14, 2024 through November 26, 2025, the putative class members were issued a total of 2,625 wage statements.  Sudibjo Decl. ¶ 10. Capping each of these employee's

total number of wage statements at no more than 40 since one year before the filing of the Complaint, Plaintiff's wage statement claim places $256,150 in controversy ((127 "initial" wage statements x $50) + 2,498 "subsequent" wage statements x $100)).

**(h)    Attorneys' Fees.**

65.    Plaintiff explicitly seeks to recover attorneys' fees for the claims in this action. *See* Complaint, Prayer for Relief. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias,* 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.").

66.    Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), overruled on other grounds by Wal-Mart Stores, *Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.,* 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (*quoting Hopson v. Hanesbrands Inc.*, 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors Inc.*, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018 [The Hon. Michael W. Fitzgerald]) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

67.    BSN Sports has established the total amount in controversy, exclusive of attorneys' fees is $4,226,646 (Plaintiff has not indicated he will seek less than 25% percent of a common fund in attorneys' fees) [see Paragraph 68 below]. BSN Sports denies any such attorneys' fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional analysis, it relies on Plaintiff's allegations the attorneys' fees are owed. Given the valuation of this matter, the attorneys' fees portion is valued at $1,056,662, calculated as follows:

| Conservative Estimate of Common Fund Amount in Controversy from Plaintiff's Claims Included Herein: | $4,226,646 |
|---|---|

DEFENDANT BSN SPORTS, LLC'S NOTICE OF REMOVAL
OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

| | |
|---|---|
| Attorneys' Fees Benchmark: | 25% |
| Attorneys' Fees: | $1,056,662 |

68.    **Summary of Defendant's calculations**. As described above, a conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, overtime wage, meal period, rest break, failure to reimburse, waiting time penalty, wage statement claims, and attorneys' fees exceed the jurisdictional minimum of $5,000,000.  These claims have placed at least $5,283,308 in controversy, summarized as follows:

| Claim | Estimated Exposure |
|---|---|
| Overtime | $1,132,052 |
| Minimum Wage | $755,506 |
| Meal Period | $755,506 |
| Rest Period | $755,506 |
| Failure to Reimburse | $93,875 |
| Waiting Time Penalty | $478,051 |
| Wage Statement | $256,150 |
| Sub-Total On Claims [Common Fund] | $4,226,646 |
| Attorneys' Fees | $1,056,662 |
| **Total** | **$5,283,308** |

69.    Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## IV.    COMPLIANCE WITH OTHER REMOVAL REQUIREMENTS

70.    In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Superior Court of the State of California for the County of Sacramento is located within the Eastern District of California.  Therefore, venue is proper in this

DEFENDANT BSN SPORTS, LLC'S NOTICE OF REMOVAL
OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

71.    In accordance with 28 U.S.C. section 1446(a), copies of all process, pleadings, and orders served upon BSN Sports are attached as Exhibits to this Notice.

72.    In accordance with 28 U.S.C. section 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Sacramento.  Notice of compliance shall be filed promptly afterward with this Court.

73.    As required by Rule 7.1 of Federal Rules of Civil Procedure, BSN Sports has concurrently filed their Certificate of Interested Parties and Disclosure Statement.

74.    Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, BSN Sports requests that the Court issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal and address any such question.

WHEREFORE, Defendant removes this action to this Court.


DATED:  January 14, 2026                    OGLETREE, DEAKINS, NASH, SMOAK &
                                             STEWART, P.C.


                                             By:  /s/ Macy Valdes
                                                  Hardy Ray Murphy
                                                  Macy Valdes

                                             Attorneys for Defendant
                                             BSN SPORTS, LLC